SCHUCHMAN, J., concurs.

---

(31 Misc. Rep. 156.)

### In re REID.

**(Rockland County Court. April, 1900.)**

TAXATION—ILLEGAL ASSESSMENT—PAYMENT—REFUND.

Laws 1892, c. 686, § 16, provides that the county board of supervisors shall cause the amount of any tax illegally or improperly assessed to be refunded, and to refund the same on order of the county court. *Held*, that one claiming the benefit of the statute need only show that a tax collected from him was illegally or improperly assessed or levied, and that it need not also appear that the assessment or levy was unjust, or that he appeared before the assessors and made objection to the form of the assessment, which made the same absolutely void.

Application by Emma G. Reid for an order requiring the supervisors of Rockland county to refund certain taxes paid by her, on the ground that the same were illegally and improperly assessed. Application granted.

Edward Wells, Jr., for petitioner.

Thomas H. Lee and W. P. Bannigan, for supervisors.

BEATTIE, J. The petitioner, Emma G. Reid, was the owner, from the year 1893, of certain lands and premises situate in the town of Haverstraw, Rockland county. During those years the premises in question were assessed as being owned or occupied by "Reid, Aaron B., heirs of," and the name of the petitioner, as such owner or occupant, did not appear upon the assessment roll. From year to year the petitioner paid the state, county, and town taxes under the assessments as made, aggregating $3,305.80. She also paid to the overseer of highways of the district in which the lands are situated, for the years 1893 and 1894, highway taxes amounting to $350. During the years 1895 to 1898, inclusive, the petitioner paid the highway taxes to the collector of taxes of the town of Haverstraw, amounting to the sum of $613.74; and she also paid from 1893 to 1898, inclusive, school taxes to the collector of the district in which the lands are located, in the sum of $1,042.60. All such taxes were paid upon the assessments in the different years, in form, to "Reid, Aaron B., heirs of," and were voluntarily paid by the petitioner. This proceeding was instituted to secure an order of the county court requiring the board of supervisors of the county of Rockland to refund the aggregate amount of taxes so paid, upon the ground that the taxes paid in each year were illegally or improperly assessed; the application being based upon the provisions of section 16, c. 686, Laws 1892:

"Correction of Assessments, and Returning and Refunding of Illegal Taxes. Any such board may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board, or which may, or shall have properly come before such board for its action, confirmation or review; and cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the county court, it shall refund any such tax."

It is conceded that the assessment, in form, as made, was illegal, but it is urged on behalf of the board of supervisors that as the petitioner was, during all the time covered by the assessments, the owner of the premises, and as she had paid only what she would have been required to pay if the assessments had been properly made, the application is not within the purpose and intent of the statute; that the act contemplates the refunding of a tax only in cases where no liability whatever existed against the persons paying the tax, either by reason of an absolute exemption of the property from taxation, or other state of facts making the retention of the tax inequitable and unjust as against the parties making the payments. In effect, it is claimed that the rules applicable to the maintenance of an action for moneys had and received are applicable to this proceeding, in that it is to be governed by "the true equity and conscience of the case." The argument is an extremely forcible one, and, in the absence of a construction of the statute which I deem controlling, I should feel inclined to adopt it in the disposition of this proceeding. The statute applies, in terms, to any tax illegally or improperly assessed; and while a just result may, in a sense, be obtained by the illegal act, it seems that the person affected by the illegality may avail himself of it, and not only save himself from expense, but secure immunity from a just share of the burden of taxation. Here the tax paid was

not legally assessed. It was, therefore, improperly assessed, and the case of the petitioner is so far clearly within the provisions of the act.

The remaining inquiry is whether the fact that the petitioner was the owner of the property assessed, and liable, under a proper form of assessment, for the tax paid, constitutes a defense to the application. I think the case of Adams v. Supervisors, 154 N. Y. 624, 49 N. E. 144, is a conclusive authority negativing the question. In that case the assessment of the lands was to "estate of Mrs. L. M. Wilcox," except in one year, when it was assessed to "heirs of L. M. Wilcox." The farm thus assessed had been the property of Lydia M. Wilcox. After her death the executor of her will paid the taxes so assessed, and thereafter instituted a proceeding like this to secure a refunding of the amounts paid. It appeared in that proceeding that under the will of the testatrix there was no specific devise of the farm. The residuary, real and personal, was given in equal shares to her children, subject to a general power of sale conferred upon the executor. The executor, being about to exercise the power of sale under the will, was called upon, and paid the back taxes upon the farm, covering a period from 1892 to 1895. Upon this state of facts the court of appeals held that the taxes assessed in the form stated were illegally assessed; that the voluntary payment of the tax by the executor was not a defense to the application to refund; that the executor stood in such relation to the property that he was entitled to maintain the proceeding. It is obvious, from the opinion of the court, that the decision as to the rights of the executor to maintain the proceeding was wholly dependent upon the question as to whether he had such an interest in the property as to entitle him to claim that he was not a mere volunteer in making the payment, and that his more or less remote interest in the property would not permit the argument that, if his interest had been the sole and immediate ownership of the property, it would have operated to prevent him from securing the relief sought. The assessments were in both forms,— to the "estate," and to the "heirs." In either case, under the will of Mrs. Wilcox, the proceeds of the sale of the farm were to be divided between her eight children equally. If they had seen fit to pay the taxes year by year, it would have reduced by so much the respective shares which they would ultimately receive from the property if the taxes in question had in fact never been paid. Failing to make such payments, the amounts paid by the executor upon the sale of the farm by him were chargeable upon all the interests of the children equally; and, upon the refunding of the tax under the order of the court of appeals, the amount so received, with interest, inured to the benefit of the children of Mrs. Wilcox equally, so that the result which is to be obtained by this proceeding is no more unfair, inequitable, or unjust than the result reached in the case cited. The fault, if any, is not with the court, but is found in the explicit wording of the statute; for the court, in the course of its opinion in the Adams Case, says:

"All that the statute requires a party who makes such an application to the supervisor to show is that the county, through its proper officer, had collected from him a tax illegally or improperly assessed or levied."

In my opinion, to interpolate by construction so as to make the last sentence read, "had collected from him a tax illegally or improperly and unjustly assessed or levied," would be directly at variance with the letter and spirit of that decision.

The further objection is made to the relief sought by this proceeding, that the petitioner was bound to appear before the assessors and make objection to the form of the assessment. Such a rule is undoubtedly applicable to all cases where the assessors have legally and in due form made their assessment, but have fixed an excessive valuation, or assessed property for which an exemption could be claimed. In re Baumgarten, 39 App. Div. 174, 57 N. Y. Supp. 284. But it does not apply where, as in this case, the assessment is absolutely void.

It is also urged that the fact that the petitioner paid the taxes from year to year shows conclusively that she was fully aware of the form of the assessment, and that her failure to object in each year as to its form was a waiver of the illegality. The difficulty with this argument is that it was only after the completion of the roll and the payment of the tax that the taxpayer could institute this proceeding. In re Buffalo Mut. Gaslight Co., 144 N. Y. 228, 39 N. E. 86. In the first year the petitioner was entitled to rely upon the presumption that the assessors would do their legal duty. With the completion of the assessment in that year, and the payment of the tax, the right of the petitioner to institute the proceeding became complete. The assessment for each succeeding year was a distinct proceeding, separate from all other assessments. People v. Zundel, 157 N. Y. 513, 52 N. E. 570. And the petitioner was entitled to rely upon the same presumption in each year. If the petitioner had appeared before the assessors, or done any act influencing them in making up their assessments, as to their form or amounts, she would undoubtedly have waived her right to question the assessments as made. Hilton v. Fonda, 86 N. Y. 340. Here there was no such appearance, and I do not think it can be fairly argued that the petitioner was bound to adopt any other or different course of procedure to bring about the legal performance of duty by public officers.

The petitioner is entitled to have the taxes paid refunded, and as the board of supervisors has authority to reassess the unpaid highway taxes (1 Rev. St. [9th Ed.] p. 691), as well as unpaid school taxes. (2 Rev. St. [9th Ed.] p. 1556), I think they can be compelled to adjust the whole matter. An order in compliance with this decision may be drawn and submitted. The proceeding in a like application by Susan D. and Melissa Gardner will be disposed of in accordance with the foregoing decision. Ordered accordingly.